

**SO ORDERED.**

**SIGNED this 05 day of August, 2005.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | No. 05-13433 |
| **LINDA CHARLOTTE BIBBINS,** | ) | |
| | ) | **Chapter 13** |
| Debtor | ) | |

**MEMORANDUM**

This case came to be heard on (1) objections to confirmation filed by the Chapter 13 trustee and Cornerstone Community Bank and (2) a motion to dismiss with prejudice filed by the Chapter 13 trustee. Having considered the record in this case, and the evidence presented at the hearing on the objections to confirmation and the motion to dismiss, the court will sustain the objections to confirmation and grant the trustee's motion

This is the ninth bankruptcy case filed by the debtor or her spouse in the last 2½ years. Mr. Bibbins filed a Chapter 13 petition on December 16, 2002, but the court denied confirmation of his

Chapter 13 plan and dismissed the case on February 14, 2003, due to Mr. Bibbins's failure to make the payments required by his Chapter 13 plan. Ms. Bibbins filed a Chapter 13 petition on March 21, 2003, but the case was dismissed on June 23, 2003, following a *de novo* hearing on confirmation due to the debtor's failure to make the payments required by her Chapter 13 plan. Four days later, Ms. Bibbins filed another Chapter 13 petition on June 27, 2003, but the case was dismissed on December 8, 2003, again following a *de novo* hearing on confirmation due to the debtor's failure to make the payments required by her Chapter 13 plan. Ms. Bibbins filed another Chapter 13 petition on January 15, 2004, but the court denied confirmation of her Chapter 13 plan and dismissed the case on March 5, 2004, due to the debtor's failure to make the payments required by the plan. A month later, Ms. Bibbins filed another Chapter 13 petition on April 9, 2004, but the court denied confirmation of her Chapter 13 plan and dismissed the case on June 16, 2004, due to the debtor's failure to make the payments required by the plan. Three weeks later, Mr. Bibbins filed another Chapter 13 petition on July 6, 2004, but the court dismissed the case on July 27, 2004, due to Mr. Bibbins's failure timely to file his schedules of assets and liabilities and related schedules and statements. Ten days later, Mr. Bibbins filed another Chapter 13 petition on August 6, 2004, but the case was dismissed with prejudice on October 18, 2004, due to Mr. Bibbins's willful failure to comply with an order of the court.[1] Mr. Bibbins filed a Chapter 7 petition on December 13, 2004, but the case was dismissed on April 27, 2005, following Mr. Bibbins's motion to dismiss the case and the trustee's abandonment of all property of the estate.

---

[1] Mr. Bibbins appealed that order, but the appeal was dismissed on April 22, 2005, due to the appellant's failure to prosecute the appeal.

Ms. Bibbins commenced the Chapter 13 case presently before the court on June 2, 2005. The petition disclosed three of her previous cases, but not the most recent one. The debtor's schedules of liabilities did not disclose the secured claim of Cornerstone Community Bank and indicated that there are no nonpriority unsecured claims. Schedule I projected household income of the debtor and her spouse totaling $1,707, and Schedule J projected that the debtor's monthly living expenses would total $717. The court finds that those expenses are very modest. At the hearing, the debtor testified that the couple's household income currently totals $2,124 per month.

The debtor's proposed Chapter 13 plan provides for payments to the trustee of $990 per month for 60 months. The plan provides for GMAC Mortgage to receive maintenance payments of $621 per month and payments of an additional $175 per month to cure a mortgage arrearage of $10,000. The plan provides for no treatment of the secured claim of Cornerstone Community Bank. The debtor has made the payments required by the plan thus far.

The record reveals that, on June 13, 2005, GMAC Mortgage filed a proof of claim asserting that the mortgage arrearage as of the commencement of this case was $35,683.12. On June 28, 2005, Cornerstone filed a proof of claim asserting a claim in the amount of $7,059.77, and that the claim is secured by a recorded judgment lien. On July 19, 2005, the Hamilton County Delinquent Tax Office filed a proof of claim asserting a claim in the amount of $3,159.63 and that the claim for delinquent real property taxes is secured by a lien on real property. Proofs of nonpriority unsecured claims totaling $4,400.43 have also been filed. The debtor has not objected to or otherwise disputed any of those claims.

There is no question that confirmation of the debtor's proposed Chapter 13 plan must be denied. In order to cure the mortgage default owed to GMAC Mortgage over a 36-month period, arrearage payments would need to be more than $800 higher than those proposed by the plan. Accordingly, the plan does not provide for the curing of the default within a reasonable time, and so does not comply with Chapter 13. 11 U.S.C. § 1322(b)(5). Confirmation is thus prohibited by § 1325(a)(1) of the Bankruptcy Code. The plan's failure to provide for any treatment of the secured claim of Cornerstone Community Bank likewise precludes its confirmation. *Id.* § 1325(a)(5). In addition, as more fully explained below, the debtor has not satisfied her burden of showing that she will be able to make all payments under the plan, which is also required before the court may confirm the plan. *Id.* § 1325(a)(6). The court must, therefore, sustain the objections to confirmation of the debtor's proposed Chapter 13 plan.

The next issue is whether the court should grant the trustee's motion to dismiss this case with prejudice. The trustee contends that this case should be dismissed with prejudice because the debtor's bankruptcy filing was in bad faith and part of a continuing pattern of abusive bankruptcy filings. Section 349(a) of the Bankruptcy Code provides that a dismissal is without prejudice "[u]nless the court, for cause, orders otherwise." Thus, under that provision and § 105(a) of the Code, a bankruptcy court may dismiss a case with prejudice when the debtor is guilty of egregious bad faith or abuse of the bankruptcy system. *E.g.*, *Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 334-41 (2d Cir. 1999); *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1223-24 (9th Cir. 1999); *Javens v. Ruskin*, No. 99-74189, 2000 WL 1279189, at *1-*2 (E.D. Mich. Aug. 24, 2000) (18-month bar), *order denying motion for reconsideration affirmed*, No. 00-2374 (6th Cir. Feb. 6, 2001); *In re Duruji*, 287 B.R. 710, 713 (Bankr. S.D. Ohio 2003); *In re Glenn*, 288 B.R. 516, 520

(Bankr. E.D. Tenn. 2002); *In re Dilley*, 125 B.R. 189, 195-98 (Bankr. S.D. Ohio 1991); *In re Vieweg*, 80 B.R. 838, 841-42 (Bankr. E.D. Mich. 1987). Based on the record and the evidence presented at the hearing, the court finds that cause for dismissal with prejudice does exist in this case.

The debtor and her spouse have had the benefits of the automatic stay virtually continuously since December 2002, yet have not performed the obligations that the Bankruptcy Code imposed on them as a *quid pro quo* for that protection. As previously indicated, the present case is the ninth bankruptcy case filed by the debtor or her spouse over the last 2 ½ years. The prime motive for filing this case and her prior cases was the debtor's desire to forestall foreclosure and save her home. However, the plan proposed by the debtor in this case is patently unconfirmable, and the evidence revealed that the debtor does not have sufficient income to make the sizeable payments necessary to obtain confirmation of the plan with the existing mortgage and arrearage. The debtor's present plan provides for payments on a $10,000 mortgage arrearage when, in fact, the arrearage is in excess of $35,000. In addition, the plan makes no provision for the secured claim of Cornerstone Community Bank. Payments on the mortgage arrearage alone would need to be increased by more than $800, while the debtor's schedules of income and expenditures do not reveal any excess disposable income. Even if, as the debtor testified, the household monthly income is $2,124, which is $417 higher than stated on Schedule I, once plan payments of $1,790 are subtracted from $2,124, that would leave approximately $334 for the debtor's and her spouse's monthly living expenses, which her own Schedule J indicates total more than $700.[2]

---

[2]The debtor's attorney contends that curing the mortgage default within 36 months would only require an increase of about $700 in plan payments, since the payment of priority unsecured
(continued...)

Mr. Bibbins testified that he has additional income from preaching, but that he has no engagements scheduled, so the court finds that the possibility of such additional income is too speculative to bear on the debtor's ability to fund the plan.[3] The debtor acknowledged on cross-examination that she and her spouse were not able to make the required payments in prior cases. She asserted that her sons could help with the payments, but admitted that they did not do so in connection with any of the previous Chapter 13 cases. Because the evidence disclosed that the debtor simply does not have sufficient income to make the payments required for a confirmable plan, the court concludes that the debtor had no reasonable expectation that she would be able to make the payments required by a confirmable plan when she commenced this case.

Considering the totality of the circumstances – the number of previous cases by the debtor and her spouse, the dispositions of those cases and the reasons therefor, the debtor's proposal of a manifestly unconfirmable Chapter 13 plan, and her obvious inability to make the payments required by a confirmable plan – the court finds that this case is another filing in a long line of serial filings that evidence bad faith and an abuse of the bankruptcy system.

Accordingly, the court will enter a separate order denying confirmation of the debtor's proposed Chapter 13 plan and granting the Chapter 13 trustee's motion to dismiss with prejudice.

---

[2](...continued)
claims could be deferred to the last two years of the plan. That would leave only $434 (according to the debtor's testimony) or $17 (according to Schedule J) for the debtor to pay her $717 in monthly living expenses. Also, it should be noted in passing that if Cornerstone's claim is, in fact, secured, the debtor's monthly plan payment would have to be even higher to deal with that claim.

[3]Indeed, the debtor herself did not include such earnings in her testimony as to the total amount of household income.

6

The court will preclude the debtor from filing another Chapter 13 bankruptcy case for a period of 180 days from the entry of the order of dismissal.

###